316 So.2d 716

**Thomas Earl CRUTCHER**

v.

**STATE.**

**8 Div. 623.**

Court of Criminal Appeals of Alabama.

June 30, 1975.

Rehearing Denied July 29, 1975.

Sullins & Davis, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State, for appellee.

BOOKOUT, Judge.

Robbery: sentence, ten years.

The appellant was indicted on the 4th day of April, 1974. On October 9, 1974, he made application for treatment under the Youthful Offender Act, and after an investigation, the trial judge denied the application. Trial commenced on November 18, 1974, and on November 19, 1974, the appellant was found guilty of robbery and punishment was fixed at ten years imprisonment in the penitentiary.

Judy Madison testified that she was working at the Lone Star Beverage Store in the city of Huntsville on March 11, 1974, when three individuals, including the appellant, entered the store and forced her at gunpoint and knifepoint to open the store's register. Her watch and her purse that contained two billfolds with change were taken from her. The sum of $128.00 was taken from the register. The witness stated that during the robbery, she observed one boy leave the store and return followed by a third boy. She also saw one boy go to the telephone and another go to the cash register. At this time, another boy took her to the restroom and after taking her watch, pushed her in the restroom. She further stated that she could not remember the appellant's role or what either of the others did individually.

Harold Parks testified that on March 11, 1974, he was driving to a veterinarian when he saw three blacks run from the Lone Star Beverage Store and get into a car. As he turned, he also noticed that the car turned the corner rapidly. Mr. Parks then took down the license tag number of the car. On returning from the veterinarian, he saw police cars and stopped and gave the tag number to the police.

A. C. Edger, Sergeant with the Huntsville Police Department, was called as a witness for the State and testified that he investigated the robbery of the Lone Star Beverage Store. He testified that after receiving the suspicious tag number, he determined the owner of the car to be Mrs. Rosanna Hyter. Based on conversations with Mrs. Hyter and her son, James, he obtained warrants for Joseph Johnson, Ricky Beasley and Thomas Crutcher, the appellant.

On the following day, Sergeant Edger proceeded to Fayetteville, Tennessee, and

located the three individuals in the county jail. Sergeant Edger's investigation revealed the fact that there were five people at the scene of the robbery. Joseph Johnson and Ricky Beasley went into the store first, each carrying guns in their possession. Johnson called the appellant from the car to the store. On entering the store, appellant was told to get the money from the cash register. All five of the individuals, even though two remained in the car, shared the money. The two who stayed in the car cooperated with Sergeant Edger, gave statements and were not charged.

Joseph Johnson then testified that he and Ricky Beasley had decided that they would rob the store and that it was not until they were in the store that Beasley requested him to summon the appellant inside. Johnson also testified that when he and Beasley drew guns, the appellant appeared startled because in the car he had not heard Johnson and Beasley making robbery plans. Johnson testified further that the appellant took the money out of the cash register and hid a gun at his sister's house. However, Johnson also stated that he thought the appellant knew that they had guns before entering the store.

Maney Garner's testimony was that she was the sister of the appellant and that she had practically raised him. Maney Garner also testified that her brother had never been in any trouble before this incident. She said she had overheard a statement by Ricky Beasley in the presence of the appellant. Ricky Beasley said to the appellant, "Man, you didn't even know we was going to rob the place."

Bill Thornton, employed as a probation officer, pursuant to the court's instructions investigated the appellant's background and verified that this was the first trouble in which the appellant had been involved. Robert Shipman, a criminal lawyer in Huntsville, testified on custom and practice in criminal law.

Thomas Earl Crutcher, the appellant, testified that on the afternoon of March 11, 1974, he was being transported home by the group hereinabove identified. He testified that he had no prior knowledge or intent in regard to the robbery and was only responding to the summons of a friend to enter the store. He also stated that he fully cooperated with law enforcement authorities from the first inquiry made of him.

I

The appellant argues that he knew nothing of the robbery and that he was merely summoned into the store by a friend, only to find a robbery taking place and was ordered by his friends to take the money from the cash register. However, the evidence establishes that the appellant did share in the fruits of the crime by taking a share of the proceeds of the robbery.

There are three essential elements of robbery: (1) felonious intent, (2) force, or putting one in fear as a means of effecting the intent, and (3) by that means, the taking and carrying away of the property of another from his person or in his presence, all these elements concurring in point of time. *Tarver v. State,* 53 Ala.App. 661, 303 So.2d 161 (1974). The evidence presented in the instant case is adequate to establish the essential elements of robbery. The testimony of Johnson that he and Beasley planned the robbery, coupled with the testimony of Judy Madison, the store operator who was robbed, sufficiently established that the robbery took place and that the appellant was a participant. Whether or not he willfully, knowingly and with felonious intent participated was a question of fact before the jury. It is a well-settled principle that it is for the jury to decide whether or not a person involved in a robbery had felonious intent. *Root et al. v. State,* 247 Ala. 514, 25 So.2d 182 (1946); *Gibson v. State,* 49 Ala.App. 18, 268 So.2d 49 (1972).

Title 14, § 14, Code of Alabama 1940, reads as follows:

"The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

Under the evidence presented, the appellant could have been convicted as either a principal or as an accomplice pursuant to § 14, supra.

## II

■ The appellant submits that the trial court erred in refusing three requested charges. Charge number 24 was as follows:

"Defendant's Charge #24: It is essential to conviction of robbery that the taking should, at time of manucaption, be with larcenous intent. If the intent were lacking as to this defendant than (sic) you cannot find the defendant guilty of robbery.

Refused

/s/ John D. Snodgrass"

Such charge was an incorrect statement of the law as applied to the facts in the instant case. Such a charge would require the jury to acquit the appellant if he lacked a felonious intent at the time he seized the money and would preclude from their consideration the question of guilt as an accomplice pursuant to Title 14, § 14, supra.

■ Refused charge number 25 dealing with the presumption of innocence and

burden of proof was fairly and substantially covered in the oral charge of the trial court.

Refused charge number 26 is as follows:

"Defendant's Charge #26: Evidence not showing violence committed against the victim or that she was put in fear by this defendant is insufficient to sustain conviction for robbery.

Refused

/s/ John D. Snodgrass"

■ We find the above charge to have been an erroneous statement of the law as applied to the evidence in the instant case. Such a charge would preclude consideration by the jury of the appellant's guilt or innocence as an accomplice. Pursuant to Title 14, § 14, supra, an accomplice participating in a robbery must be tried as a principal even though the evidence does not establish that the appellant personally committed violence against the victim or put her in fear. It is sufficient for conviction if the evidence establishes that the appellant's accomplices committed violence against the victim or put her in fear, and pursuant to the Alabama Accomplice Statute, he is responsible as a principal for the acts of his accomplices which constituted the essential elements of the offense of robbery.

## III

■ In the instant case, the jury set punishment at ten years imprisonment in the penitentiary, but recommended leniency. The trial court set sentence at ten years in the penitentiary. Appellant submits that because the jury's verdict contained the recommendation for leniency, this had the effect of making the verdict null and void, citing *Cook v. United States,* 379 F.2d 966 (Ala. 5th Circuit 1967). However, in *Cook, supra,* counsel for the

defendant requested that the jury be polled after the verdict was read. There the verdict contained the request that the court give the appellant, "every degree of leniency possible." Upon the polling of the jury, a number of the jurors stated, "Guilty, as noted on the bottom," or gave a similar response. Then counsel for the appellant, Mr. Redden, asked:

"We request the court to inquire of the jury whether their separate and several votes would be for conviction if they were advised that they could not make this recommendation, or that this recommendation was not a subject for their consideration."

The trial judge declined to do so in that case. Judge Ainsworth of the Circuit Court of Appeals stated:

". . . We hold that the jury's verdict, taken together with the court's comments to the jury on receipt of the verdict and the responses of each juror to the court's poll, showed an obscurity—a lack of definite and precise meaning—and that obscurity having rendered the verdict doubtful and not having been clarified by the trial court as requested by the defendant when there was opportunity to do so was fatal to it. See *Williams v. State,* 1950, 92 Okl.Cr. 70, 220 P.2d 836; *Smith v. State,* 1898, 75 Miss. 542, 29 So. 260, at 265, 266. Cf. *United States v. Mankowski,* E.D.Wis., 1960, 179 F.Supp. 667."

In the instant case not only did counsel for the appellant fail to request to poll the jury, but nowhere in the record can it be shown or inferred that the jury might possibly have held otherwise if any juror had known the recommendation of leniency would have had no effect. The proper method would have been for the defense attorney to ask to have the jury polled at which time he could have asked if each would have voted the same if the judge had instructed them that they could not

recommend leniency. See: *People v. Syph,* 74 Miss.2d 466, 344 N.Y.S.2d 47 (1973).

After a careful reading of this record, giving consideration to those matters stressed in appellant's brief, it is our judgment that there is no error prejudicial to the appellant in the record.

Affirmed.

TYSON, HARRIS, DeCARLO, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

CATES, P. J., not sitting.