Appellant was convicted of robbery and the trial judge sentenced him to imprisonment in the penitentiary for a term of twenty-five years. Throughout the trial proceedings he was represented by counsel of his own choice and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and trial counsel represents him on this appeal.
The victim, Otis Griffin, was fifty-seven years of age on November 13, 1978, at the time he was allegedly robbed by appellant and another black male on the railroad tracks in Auburn, Alabama. He testified during the trial that he was walking on the railroad track and fell backward and that appellant "shook him down" and took $26.00 from his sock. He testified that appellant was the only person present at *Page 444 
the time his money was taken from him. His testimony was completely at variance with a statement he gave a police officer after the alleged robbery and the prosecutor made known to the court that he was completely taken by surprise and was allowed to cross-examine the victim to refresh his recollection concerning the signed statement he gave the investigating officer. That statement is as follows:
 "By way of refreshing your recollection, I want to ask you if you made the following statement, and I quote: `I, Otis Griffin, on Monday, November 13, 1978, got up and went over to Ruby Core's house. Ruby lives at Moton Apartments, Number 20. I arrived there around 9:30 a.m. I stayed at the apartment all day. While I was there, Ruby asked me for a dollar and I gave it to her. I ate a sandwich around lunchtime. People came and went all day. We sat around and listened to records and talked. Ruby left around 4:00 p.m., to go to the Maddox house. Elizabeth McRae had been at the house with me — with us, and left with Ruby. A little after 5:00 p.m., Elizabeth McRae came back and told me Ruby wanted to see me. I left with Elizabeth and she led me across the railroad tracks to Railroad Avenue. Two black males were standing on the railroad track, approximately ten to fifteen feet apart. When I saw the two black males, I felt like something was wrong. Elizabeth told me to stand at the spot by the Railroad Avenue, while she went to get Ruby Core.
 "Elizabeth crossed the tracks toward State 14 and hollered, `Ruby,' three times. The two black males walked up to me. Herman Vickerstaff, one of the two said, `Don't you know this is my wife?' Then he pushed me down into the bushes. Herman said, `Don't make me kill me; where's that money at?' Elizabeth walked back over to where we were and stood over me while Herman took my money. Herman took my change purse which contained eight cents. The purse was a black zipper-type. He then took my billfold out of my hip pocket. He also took a fingernail clipper out of my pocket. The three stood over me and one of the boys took my money out of my wallet.
 "Elizabeth said, `That's all he's got, $26.00.' They split the money up and threw my money down beside me.
 "One of the boys said, `Don't look were we're going or I'll shoot back at you.' When they got on the railroad tracks, they stood up. I got up, picked up my wallet and walked back to the tracks. When I got up to the tracks, I couldn't see any of them. I met Ruby walking around State 14, headed for her house. I told her what had happened. She told he to sit down on the sidewalk and she left to call the police. Ruby came back and the police arrived. This is a true and correct statement to the best of my knowledge.'
"Did you make that statement to the police?
"A. I made some of it. I didn't say all of that."
The victim was further questioned by the prosecutor.
From the record:
 "Q. Okay. But you are saying that Herman Vickerstaff took your money?
"A. Yes, sir.
 "Q. And you didn't give it to him voluntarily, did you?
"A. No, sir."
He testified that appellant pushed him down and "shook him down" removing $26.00 from one of his socks.
It is clear from the testimony of the victim that he recanted the statement which he gave the police officer immediately following the alleged robbery. The trial court properly permitted the prosecutor to read the statement the victim gave to the investigating officer.
Ruby Core testified that she knew both the victim and appellant. She said the victim was at her home along with Elizabeth McRae on November 13, 1978, at about sundown; that she and McRae left the victim at her house when they walked down the *Page 445 
road together. A short time later she returned home and found the victim sitting on the sidewalk in front of her house. She testified that he was crying and "His head was full of straw and he had on a sweater and it was full of straw."
This witness further testified that she was employed at Jones Cleaners and that after this incident occurred appellant came to see her three times at her job. He asked her to see if the victim would take up the warrant against him.
From the record:
 "And the Auburn police said that we couldn't take it up; that the D.A., you know, would have to get a warrant himself on it. And I asked Herman Vickerstaff why did he do it and he told me he was broke."
She further testified that when she returned home on the afternoon of the robbery she had a conversation with the victim and that she then called the police.
On or about November 20, 1978, appellant was interrogated by Detective Edwin D. Downing of the Auburn Police Department. Before the interrogation began Detective Downing read appellant the Miranda rights and warning and appellant stated that he understood his rights and that he could read and write. He voluntarily signed a waiver of rights form which was introduced into evidence without objection. Appellant then made a confessory statement. Prior to appellant making a statement concerning the robbery the State laid the proper predicate by showing that no threats, promises, rewards or other inducements were made to get appellant to make an incriminating statement. There is no contention otherwise. This was a question and answer statement that was reduced to writing and presented to appellant. Appellant read the transcribed statement and signed his name thereto in the presence of Detective Downing. After the proper predicate was laid the signed statement was read to the jury. The statement is as follows:
 "Statement of Herman Vickerstaff. Address 311 Fraser Street, Auburn, Alabama. Phone number 821-2718. Date, 11-20-78. Page one of three pages. I, Herman Vickerstaff, on November 13, 1978, was at Otis Maddox's house in Auburn. I arrived at Otis's around 10:30 a.m. I hung around all day between Otis's house and Van's Lounge. I drank some gin and some beer. While I was standing on the porch, Buck Pitts walked up to me. Buck said, `Hey, Cabbage, I believe this old man has got two or three or four hundred dollars in his pocket. Let's get it.' I just looked at Buck and said, `It's still daylight.' Buck said, `Okay, we'll wait `til late.' Buck walked away and Otis Griffin walked in Otis Maddox's house, looking for Ruby Core. Mr. Griffin walked back on the porch and asked me if I had seen Ruby. I told him she had just left and went down into Meadows Quarters. Mr. Griffin went into the alley. About twenty minutes later, Mr. Griffin walked back out of the alley. Elizabeth McRae walked out of Mr. Maddox's house and walked up to me. She asked me if I wanted a swallow of her beer. I said to her, `Buck said that old man has got some money; do you want to get him?' She said, `Yeah, let's get him.' We started walking behind Otis Griffin at a distance of a block or two. He was headed toward Moton Apartments. Elizabeth and I knew where he was headed, for Ruby Core's apartment. He got to the house and went inside. There were three or four guys sitting on a block out in front of Ruby's apartment. They were about three or four apartments down from Ruby's. I said, `Hey, Lip, let's go. These guys will see us. It's still daylight.' I walked across State 14, and stood on the railroad tracks. When I got on the tracks, I saw Buck standing on Railroad Avenue. I looked back, expecting to see Elizabeth following. I saw Elizabeth walk up to Ruby's apartment. She told Mr. Griffin that Ruby was waiting to see him and to come with her. They passed me and walked across the railroad tracks. They walked down Railroad Avenue about thirty to fifty yards. I was trailing behind them about eight to *Page 446 
ten yards behind. Buck Pitts jumped out of the bushes and grabbed Otis Griffin. He said, `What you doing with my wife?' Buck pushed Mr. Griffin out of the road and down into the bushes. He then started searching him for money. I walked up and helped Buck search Mr. Griffin. Elizabeth was standing there, looking. He only had change in his pockets. I felt around his socks and found twenty-six dollars. Elizabeth, Buck and I ran down Railroad Avenue together. We stopped in front of Van's Lounge on Railroad Avenue. We sent Elizabeth across to Van's Lounge to buy three beers and get the twenty-dollar bill changed. We split the remaining money and it came to eight dollars apiece. And then we split up and everybody went their own way. This is a true and correct statement to the best of my knowledge.' It's signed, `Herman Vickerstaff,' and witnessed by myself."
Appellant testified in his behalf and denied that any force, threats, or violence was used in taking the $26.00 from the victim. He did admit that he searched the victim and took $26.00 from his sock. He stated no other person was present when he took the money. He repudiated his signed confession.
The trial judge charged the jury on the law of aiding and abetting as follows:
 "Now, aiding and abetting is when two or more persons engage in the commission of a crime. What is the law as far as that is concerned? Well it is well established that under Alabama law that, when by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator and if the purpose is carried out, each is guilty of the offense committed, whether he did an overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting or assisting or who is ready to aid, abet or assist the other in the perpetration or commission of the offense, is a guilty participant and in the eye of the law is equally guilty with the one who actually does the act. Such community of purpose or conspiracy need not be proven by positive testimony. It rarely is so proved. The jury is to determine whether it exists and the extent of it from the conduct of the parties and all the testimony in the case."
The court also charged the jury that grand larceny was a lesser included offense in a charge of robbery. At the conclusion of the oral charge appellant's counsel announced, "Satisfied, Your Honor."
Appellant's counsel requested only two written charges and the court gave both of them. They are:
Charge No. 1
In prosecution for robbery, evidence showing no force was used nor putting in fear is insufficient to support conviction.
Charge No. 2
To constitute robbery, the one robbed must be deprived of his property by force or fear.
The three essential elements of the crime of robbery are: (1) felonious intent, (2) force, or putting in fear as the means of effecting the intent, and (3) by that means the taking and carrying away of the personal property of another from her person or in his presence, with all three elements occurring in point of time. Moore v. State, 57 Ala. App. 668, 331 So.2d 422;Crutcher v. State, 55 Ala. App. 469, 316 So.2d 716.
In Baker v. State, Ala.Cr.App., 344 So.2d 547, this court said:
 "In robbery, the force or intimidation employed is the gist of the offense. The manner of the taking is in the alternative; if force or violence is used, fear is not an essential ingredient. Conversely, if fear is used, there need be no violence."
It cannot be gainsaid that force or violence was employed in this case in perpetrating the robbery. One of the participants pushed or shoved the victim into the bushes and appellant admitted that while the victim was on the ground he robbed him of $26.00. *Page 447 
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this court has no right to disturb the verdict. Haggler v. State, 49 Ala. App. 259,270 So.2d 690.
Appellant contends the prosecutor made an improper argument to the jury concerning the conduct of the defendant in other incidents in Auburn. The objection was sustained and this ruling cured any possible error in this regard.
Counsel for both the State and the defendant are allowed a wide latitude in drawing their deductions from the evidence and argument to the jury. Hurst v. State, Ala.Cr.App.,356 So.2d 1224.
We have carefully examined the record for error injuriously affecting the substantial rights of the appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.