COBB, Judge.
On April 16, 2003, Elvis Dewayne McE-lyea was convicted of two counts of capital murder — murder committed during a robbery and murder for hire — and one count of first-degree robbery, violations of §§ 13A-5-40(a)(2), 13A-5-40(a)(7), and 13A-8-41(a)(2), Ala.Code 1975. The trial court imposed two sentences of life imprisonment without the possibility of parole for the capital convictions and 99 years in prison for the robbery conviction, the sentences to run consecutively. On May 14, 2003, McElyea filed a motion for a new trial. On June 27, 2003, after a short hearing, the trial court denied the motion. This appeal followed.
The facts adduced at trial indicate the following: McElyea and his girlfriend lived in a mobile home; they allowed friends to room with them and pay rent. On December 29, 2000, one of McElyea’s roommates, Lee Woods, was having an affair with Daphne Thompson, who was married and worked at a “spa”[1] as a secretary. Woods was short on money and had not paid McElyea and McElyea’s girlfriend rent for six months; he owed them $1,800. Woods’s brother also roomed with McE-lyea and his girlfriend, and there was some testimony that he, too, owed them past-due rent. Woods also owed McElyea money for repairing his vehicle. That evening, at the “spa,” Thompson’s husband was beaten to death. McElyea assisted Woods in the murder of Thompson’s husband. The two placed the victim’s body in the trunk of the victim’s car and took money from his pocket and wallet. The two returned to help clean up the scene; the victim’s wife helped, too.
The victim was reported as a missing person. The police found the victim’s abandoned car in a wildlife refuge, towed it to the Sheriffs Department, and “popped the lever to the trunk.” (R. 145.) The victim’s body was found inside the trunk with a plastic bag around his head.

I. McElyea’s Argument on Appeal

McElyea raises only one issue on appeal. He argues that there was insufficient evidence of robbery to support the robbery component of his robbery-murder conviction. Specifically, he contends that “the taking of [the victim’s] wallet was a mere afterthought concocted to obscure the real reason for McElyea’s and Woods’s involvement in the murder.” (McElyea’s brief, p. 23.)
The following additional facts are relevant: McElyea gave two statements to police.[2] In his first statement, he said that Woods had offered him $200 to hit the victim on the head, and McElyea said he agreed to do it because he needed the money. McElyea admitted that he struck the victim. After the victim had been struck down, Woods offered McElyea $50 to place a plastic bag over the victim’s head, $200 to carry the victim to the ear, and $200 to drive the body somewhere. McElyea said that, as he placed the victim’s body in the car, uncertain of whether he was dead, he told Woods that he had “heard on TV” that one should make a murder look like a robbery. McElyea took $30 from the victim’s pocket, and Woods took the wallet and handed it to McElyea; *996 McElyea took $250 from the wallet, giving $100 to Woods and $40 to Woods’s brother. In the end, Woods paid McElyea only $50 out of his pocket for McElyea’s participation in the murder.
Two days after he had given his initial statements, McElyea gave another statement to law enforcement in which he claimed that he had not been completely truthful during the first interview. He claimed that Woods had not initially offered him money to hit the victim on the head, but instead had “conned” him into going to the “spa.” McElyea claimed that he could not hit the victim because “it was not right,” so Woods took the bat away from McElyea and threatened to beat McElyea if he did not slit the victim’s throat. . McElyea stated that Woods did not offer him any money until after the victim was dead. He claimed that it was the victim’s wife who suggested that McE-lyea make it look like a robbery and that he take money out of the wallet. McElyea claimed that he took $135 for himself and that he gave $100 to Woods.
McElyea’s argument on appeal has two bases: one involving the inconsistency of the evidence and one involving the sufficiency of the evidence. We address each in turn.

A. Inconsistency of the Evidence

McElyea contends 'that “the conflicted evidence [at trial] leads to only one conclusion” — that the theft was a mere afterthought to the murder. (McElyea’s brief, p. 23.) The crux of McElyea’s argument seems to be that, according his second statement to law enforcement, McElyea did not think of committing -the theft until the victim’s wife suggested it after the victim had been killed; this second statement conflicted with McElyea’s earlier statement that the idea of the theft had come to him from something he had seen on television, presumably before the commission of the murder.
Because this argument concerns an apparent conflict in the evidence, it relates to the weight of the evidence, rather than to the sufficiency of the evidence. To that end, McElyea argued in his motion for a new trial that the verdict “was contrary to the law.” (C. 72.) Therefore, this argument has been preserved for appellate review. Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Crim.App.1993) (“The issue of the weight of the evidence is preserved by a motion for a new trial, stating ‘that the verdict is contrary to law or the weight of the evidence.’ See A.R.Cr.P. 24.1(c)(1).”).
“ We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981); Nobis v. State; 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). ‘ “‘[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ” Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App.1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931)).’
“... See Smith v. State, 604 So.2d 434 (Ala.Cr.App.1992); Pearson v. State, 601 So.2d 1119 (Ala.Cr.App.1992); Curry v. State, 601 So.2d 157 (Ala.Cr.App.1992).”
Zumbado v. State, 615 So.2d at 1240-41 (quoting Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App.1989)). We will not second-guess the jury’s determinations regarding the weight of the evidence. “Moreover, a conflict in the testimony is the sole province for the jury to determine and they may properly consider conflicting statements as indicating consciousness of guilt. Cumbo v. State, [368 So.2d 871 (Ala.Crim.App.1979)]; Hayes v. State, 395 *997 So.2d 127 (Ala.Crim.App.), cert. denied, 395 So.2d 150 (Ala.1981).” Boggan v. State, 455 So.2d 228, 240 (Ala.Crim.App.1984). Therefore, this argument is without merit.

B. Sufficiency of the Evidence

McElyea also contends that “[t]here is no evidence that the murder ... occurred during a robbery.” (McElyea’s brief, p. 23.) McElyea moved for a judgment of acquittal at the close of the State’s evidence on the ground that “the undisputed testimony in the case i[s] that the taking of property from the person of the deceased occurred after his death and was only thought of by the principals involved after the death of the victim.” His motion was denied; he renewed the motion at the close of his case, and that motion, too, was denied.
“ ‘In a challenge of the sufficiency of the evidence, an appellate court must consider the evidence in the light most favorable to the prosecution, and the appellate court will not substitute its judgment for that of the trier of fact.’ Maddox v. State, 620 So.2d 132, 133 (Ala.Cr.App.1993). Conflicting evidence presents a jury question not subject to review on appeal, provided that the state’s evidence established a prima fa-cie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). A trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983)....
[[Image here]]
“ ‘ “As the Alabama Supreme Court held in Cohern v. State, 273 Ala. 547, 142 So.2d 869 (1962), ‘the fact that the victim was dead at the time the property was taken would not militate [against a finding] of robbery if the intervening time between the murder and the taking formed a continuous chain of events.’ Clements v. State, 370 So.2d 708, 713 (Ala.Cr.App.1978), aff'd in pertinent part, 370 So.2d 723 (Ala.1979); Clark v. State, 451 So.2d 368, 372 (Ala.Cr.App.1984). To sustain any other position ‘would be tantamount to granting to would-be robbers a license to kill their victims prior to robbing them in the hope of avoiding prosecution under the capital felony statute.’ Thomas v. State, 460 So.2d 207, 212 (Ala.Cr.App.1983), aff'd, 460 So.2d 216 (Ala.1984).
“ ‘ “Although a robbery committed as a ‘mere afterthought’ and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, see Bufford v. State, [382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala.1980)]; O’Pry v. State, [642 S.W.2d 748 (Tex.Cr.App.1981)], the question of a defendant’s intent at the time of the commission of the crime is usually an issue for the jury to resolve. Crowe v. State, 435 So.2d 1371, 1379 (Ala.Cr.App.1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim’s property and fled. Cobem v. State, 273 Ala. [at] 550, 142 So.2d [at] 871 (1962). The defendant’s intent to rob the victim can be inferred where ‘[t]he intervening time, if any, between the killing and robbery was part of a continuous chain of events.’ Thomas v. State, 460 So.2d at 212.... See also *998 Cobern v. State; Crowe v. State; Bufford v. State; Clements v.. State.”’
“Bush v. State, 695 So.2d 70, 118-19 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, [522] U.S. [969], 118 S.Ct. 418, 139 L.Ed.2d 320 (1997), quoting Hallford v. State, 548 So.2d 526, 534-35 (Ala.Cr.App.), aff'd, 548 So.2d 547 (Ala.1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989), quoting, in ,turn, Connolly v. State, 500 So.2d 57, 63 (Ala.Cr.App.1985), aff'd, 500 So.2d 68 (Ala.1986).”
Ingram v. State, 729 So.2d 883,. 895-96 (Ala.Crim.App.1996) (opinion on return to remand).
In this case, the only event that separated the murder from the robbery, occurred when the perpetrators carried the victim’s body to the car; thus, given that the intervening time between the two events was so minimal, the jury could have inferred that the robbery and the murder were part of one continuous chain of events.
Additionally, the jury could have discounted McElyea’s statements indicating that the robbery was an afterthought, particularly in light of the fact that McElyea, in his first statement to law enforcement, stated that he had agreed to hit the victim in the head because he needed the money. Evidence at trial indicated that Woods, too, needed money to pay McElyea for the rent owed and the repairs on his vehicle. Evidence at trial indicated that Woods and his brother owed McElyea and his girlfriend a large sum of • money, but yet Woods offered to pay McElyea money to hit the victim in the head. The jury could have inferred that Woods, apparently without funds, intended to recoup the money from the victim and then pay McElyea, and that McElyea, owed money by Woods, was aware that the source of his payment would be the victim’s wallet.
Although the robbery followed the murder, evidence indicated that the robbery was part of a continuous chain of events, and, from that fact and the evidence of financial motivation on the part of McE-lyea and Woods, the jury could have inferred from the circumstances of the case that the robbery actually began when the victim was attacked. Therefore, this argument is without merit, and the trial court properly denied McElyea’s motions for judgment of acquittal.

II. Double Jeopardy Violation

.Finally, although not argued by McElyea on appeal, we note that his conviction for capital murder during a robbery and his conviction for robbery violate the prohibition against double jeopardy. Count 1 of the indictment charged McE-lyea with capital murder as follows:
“The Grand Jury of said county charge[s] that, before the finding of this indictment, ELVIS DEWAYNE MCE-LYEA, ... did, on or about September 29, 2000, intentionally cause the death of another person, to-wit: JASON ANDREW THOMPSON by beating him with a ball bat, flashlight, or other like instrument, and ELVIS DEWAYNE MCELYEA caused said death during the time that ELVIS DEWAYNE MCELYEA was in the course of committing a theft of United States currency, the property of JASON ANDREW THOMPSON, by the use of force or by threatening the imminent use of force against the person of JASON ANDREW THOMPSON with the intent to overcome his physical resistance, or physical power of resistance or to compel acquiescence, to the taking of or escaping with said property, and at the time caused serious physical injury to the said JASON ANDREW THOMPSON, in violation of Section 13A-5-40(a)(2) of the Code of Alabama.”
(C. 23.) Count 3 of the indictment charged McElyea with robbery as follows:
*999 “The Grand Jury of said county further charge[s] that, before the finding of this indictment, ELVIS DEWAYNE MCE-LYEA, ... did, on or about December 29, 2000, in the course of committing the theft of United States Currency, the property of JASON ANDREW THOMPSON, use force or threaten the imminent use of force against the person of JASON ANDREW THOMPSON with intent to overcome his physical resistance or physical power of resistance or to compel acquiescence of the taking or escaping with the property and at the time caused serious physical injury to the said JASON ANDREW THOMPSON, in violation of Section 13A-8-41 of the Code of Alabama.”
(C. 23.)
We recently addressed a similar issue in Buford v. State, 891 So.2d 423, 435-36 (Ala.Crim.App.2004):
“It is well settled that ‘[a] defendant cannot be convicted of both a capital offense and a lesser offense that is included in the capital charge.’ Adams v. State, [Ms. CR-98-0496, August 29, 2003] — So.2d -, - (Ala.Crim.App.2003). See also Turner v. State, [Ms. CR-99-1568, November 22, 2002] - So.2d - (Aa.Crim.App.2002). Section 13A-1-8(b), Ma.Code 1975, provides, in pertinent part:
“‘(b) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
“ ‘(1) One offense is included in the other, as defined in Section 13A-1-9.’
“Such a double-jeopardy transgression implicates the jurisdiction of the trial court and must be noticed by this Court regardless of whether it was raised. See, e.g., Straughn v. State, 876 So.2d 492 (Ala.Crim.App.2003)(opinion on return to remand and on application for rehearing); Borden v. State, 711 So.2d 498 (Ala.Crim.App.1997), aff'd, 711 So.2d 506 (Ala.1998); and Rolling v. State, 673 So.2d 812 (Ala.Crim.App.1995).”
Based on the indictment, as well as our review of the record, it is clear that robbery, as charged in count 3 of the indictment, was a lesser-included offense of murder made capital because it was committed during a robbery, as charged in count 1 of the indictment. Therefore, McElyea’s convictions for both robbery-murder and the lesser-included crime of robbery violated double-jeopardy principles, and the trial court lacked jurisdiction to adjudge him guilty of both offenses.
For the reasons stated above, we affirm McElyea’s two capital-murder convictions, as well as the sentences imposed for those convictions. However, we remand this case for the trial court to vacate McElyea’s conviction and sentence for robbery under count 3 of the indictment.
AFFIRMED IN PART AND REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

. One witness described the spa as a “whorehouse.” (R. 184.)

. Both statements were audiotaped. The tapes were played at trial for the jury. No transcripts of the tapes were made. The audiotapes are included in the exhibits before this Court on appeal.