WISE, Presiding Judge.
 

 The appellant, Taurus Lamont Bell, was convicted of the capital offense of arson-murder, a violation of § 13A-5-40(a)(9), Ala.Code 1975. The trial court sentenced him to imprisonment for life without the possibility of parole. Bell did not file any post-judgment motions. This appeal followed.
 

 The State presented evidence that, on the night of February 3, 2000, the victim, Patricia Woodruff, was preparing for a trip the following morning to visit a casino with friends and family members. At some
 
 *161
 
 point before daybreak the next morning, the victim’s house was consumed by fire, and her badly charred body was later discovered in the house. When investigators found the victim’s body, they observed a ligature with a buckle on it around her neck and duct tape on her face.
 

 Jermaine Dunn, the victim’s son, testified that he last saw his mother around 11:30 p.m. on February 3, 2000. At that time, she was putting approximately two handfuls of quarters, dimes, and nickels into a bag in preparation for the trip the next day. Dunn also testified that his mother smoked, that she kept candles and an ashtray on the glass coffee table in the living room, and that the house was heated by kerosene heaters and an electric heater.
 

 Clarence Woodruff, the victim’s brother, testified that he saw the victim between 9:00 p.m. and 9:15 p.m. on February 3, 2000. They were going to a casino the next day, and she had coins in a plastic grocery bag to take with her. The top of the bag was twisted down to the coins but was not tied.
 

 James Sawyer testified that he worked as a butcher at Evans Meats; that, in the early morning hours of February 4, 2000, he was outside with his cousin, Marcus Hudson, smoking when he saw a black male who was wearing a brown freezer suit or coveralls; that Hudson spoke with the man; and that a vehicle that belonged to Alfonso Tellis, a co-worker, was later determined to be missing from the parking lot. At trial, Marcus Hudson identified Bell as the person he spoke to in the parking lot at Evans Meats.
 

 Danny Humphrey testified that he was employed with the Jefferson County Sheriffs Department on the night of February 3, 2000; that, around 3:10 a.m., he noticed that a vehicle was stopped with the engine running in a store parking lot near the victim’s house; that the store was closed, and there was not anyone in the vehicle; that the steering column in the vehicle was broken, and a passenger side window had been broken out; that he checked and determined that the vehicle belonged to Alfonso Tellis, but had not been reported stolen; that he had the vehicle towed; and that he then went to the victim’s house around 5:00 a.m.
 

 Linda Anderson and Bill Gaskey testified that they saw a man dressed in brown coveralls walking in the vicinity of the victim’s house around 4:45 a.m. on February 4, 2000. Kenneth Jackson also testified that he passed a man who was wearing brown coveralls and walking the same area at approximately 5:10 a.m. that day.
 

 Chandra Tannehill, the victim’s daughter, testified that, after an uncle telephoned her to tell her about the fire at her mother’s house, she and her aunt immediately drove to the victim’s house. On the way, they saw Bell, who lived with his grandmother next door to her aunt, walking away from the area of her mother’s house. Bell was wearing brown coveralls. Tannehill later told law enforcement officers that she had seen Bell walking away from the area of her mother’s residence.
 

 Deputy Dennis Ferguson of the Jefferson County Sheriffs Department testified that, while he was on his way to the victim’s house, he passed a man who he later determined to be Bell wearing brown coveralls and walking away from the area. Later, he and Deputy Fred Berry took Bell into custody. At that time, Bell gave them a false name. He also had a plastic bag of nickels, dimes, and quarters in his possession. Ferguson testified that they released Bell after a short time because they did not know that anyone had died in the fire and thought they were simply dealing with a house fire.
 

 
 *162
 
 Deputy Fred Berry of the Jefferson County Sheriffs Department testified that he heard a “be on the lookout” alert for a black male wearing coveralls, that he assisted Ferguson in taking Bell into custody, and that Bell used a false identity. He also testified that Bell had a plastic bag containing approximately two handfuls of change, a lighter, two pieces
 
 of
 
 paper
 
 containing
 
 telephone numbers, and a pair of gloves in his possession. However, he did not have any cigarettes on his person. Berry observed that the plastic bag had been tied in a knot and that the coins in the plastic bag were nickels, dimes, and quarters.
 

 Paul Price, a deputy coroner for Jefferson County, responded to the fire at the victim’s home on February 4, 2000. He testified that the body was located by what appeared to be a burned up space heater and that there was what appeared to have been a belt around the victim’s neck. He also noted that there appeared to be a lot of debris in the area around the victim’s body.
 

 Kimberly Washington testified that her cousin, Santrice Farley, dated and later married Bell. At about 10:00 a.m. on February 4, 2000, Bell telephoned her and asked for Farley. When she told him Farley was not there, he told her that “something bad had happened” and that he might be going to jail. (R. 380.)
 

 Santrice Farley testified that she was married to Bell in February 2000, but they were not living together. On February 4, 2000, he telephoned her at work. Sometime later, he asked her to take him to a service station to retrieve a handgun he had hidden behind the building. Upon their arrival, Bell retrieved a silver handgun that had duct tape wrapped around the handle.
 

 Michael Haynes, a deputy state fire marshal, testified that he responded to the scene at the victim’s house; that it appeared that the fire had originated in the living room; that he believed the fire had been intentionally set; and that the investigation revealed some candles that were on or under a couch in the living room, which would have been unusual and could have been what started the fire. He also testified that there was a kerosene heater near the victim’s body in a den area that was adjacent to the living room, but he ruled it out as the cause of the fire, and that there was not any evidence that an accelerant was used. Finally, he stated that coins would not have burned up in the fire.
 

 Dr. Gary T. Simmons, a forensic pathologist with the Jefferson County Coroner/Medical Examiner’s Office, examined the victim’s body. He testified that her body was badly burned, that there was a ligature around her neck, and that there was duct tape on her face. Simmons testified that he did not find any evidence of soot, smoke, or carbon monoxide in the victim’s body, which strongly indicated that she was dead when the fire started. Based on his examination, he concluded that she died of asphyxia and that she was dead at the time the fire started.
 

 Finally, forensic testing revealed that the victim’s blood was on one of Bell’s tennis shoes.
 

 Bell argues that the trial court erred in denying his motion for a judgment of acquittal at the close of the State’s case. Specifically, he contends that the State did not establish that he intentionally started a fire in the victim’s house and that the State did not establish that the murder occurred during the commission of second-degree arson because the evidence showed that the victim was dead before the fire started.
 

 
 *163
 
 “The following are capital offenses:
 

 [[Image here]]
 

 “(9) Murder by the defendant during arson in the ... second degree committed by the defendant....”
 

 § 13A-5-40(a), Ala.Code 1975.
 

 “A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fee or causing an explosion.”
 

 § 13A-7-42(a), Ala.Code 1975.
 

 “In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution.
 
 Cumbo v. State,
 
 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case.
 
 Gunn v. State,
 
 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty.
 
 Thomas v. State,
 
 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt.
 
 Willis v. State,
 
 447 So.2d 199 (Ala.Cr.App.1983);
 
 Thomas v. State.
 
 When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not consti-
 

 tute error.
 
 Young v. State,
 
 283 Ala. 676, 220 So.2d 843 (1969);
 
 Willis v. State.”
 

 Breckenridge v. State,
 
 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
 

 “‘In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.’
 
 Faircloth v. State,
 
 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed,
 
 Ex parte Faircloth,
 
 [471] So.2d 493 (Ala.1985).
 

 [[Image here]]
 

 “ ‘ “The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is
 
 legally
 
 sufficient to allow submission of an issue for decision to the jury.”
 
 Ex parte Bankston,
 
 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.”
 
 Kelly v. State,
 
 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal.
 
 Roberson v. State,
 
 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.”
 
 Fuller v. State,
 
 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied,
 
 Fuller v. Alabama,
 
 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (I960).’
 
 Granger [v. State],
 
 473 So.2d [1137,] 1139 [(Ala.Crim.App.1985)].
 

 “... ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that
 
 *164
 
 the accused is guilty.’
 
 White v. State,
 
 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’
 
 Cochran v. State,
 
 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds,
 
 Ex parte Cochran,
 
 500 So.2d 1179 (Ala.1985).”
 

 White v. State,
 
 546 So.2d 1014, 1017 (Ala.Crim.App.1989). Also,
 

 “ ‘[circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt.
 
 Ward v. State,
 
 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.
 
 Cumbo v. State,
 
 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).’
 

 “Ward,
 
 610 So.2d at 1191-92.”
 

 Lockhart v. State,
 
 715 So.2d 895, 899 (Ala.Crim.App.1997). Finally,
 

 “ ‘[i]ntent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’
 
 McCord v. State,
 
 501 So.2d 520, 528-529 (Ala.Cr.App.1986), quoting
 
 Pumphrey v. State,
 
 156 Ala. 103, 47 So. 156 (1908).”
 

 French, v. State,
 
 687 So.2d 202, 204 (Ala.Crim.App.1995), aff'd in part, rev’d in part on other grounds, 687 So.2d 205 (Ala.1996).
 

 “ ‘The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury.
 
 McMurphy v. State,
 
 455 So.2d 924 (Ala.Crim.App.1984);
 
 Craig v. State,
 
 410 So.2d 449 (Ala.Crim.App.1981), cert. denied, 410 So.2d 449 (Ala.1982).’
 
 Loper v. State,
 
 469 So.2d 707, 710 (Ala.Cr.App.1985).”
 

 Oryang v. State,
 
 642 So.2d 989, 994 (Ala.Crim.App.1994).
 

 In
 
 Jones v. State,
 
 946 So.2d 903, 923-27 (Ala.Crim.App.2006), we addressed an argument similar to the appellant’s in the context of a conviction for the capital offense of robbery-murder as follows:
 

 “The appellant further argues that the State did not present sufficient evidence to support his convictions for the capital offense of robbery-murder. Specifically, he contends that, ‘[although in this case one victim’s purse and automobile were taken and one victim’s wallet was taken, the evidence indicates those actions to have been an afterthought and not the intent of the murders.’ (Appellant’s brief at p. 10.)
 

 [[Image here]]
 

 “ ‘To sustain a conviction under § 13A-5-40(a)(2) for capital robbery-murder, the state must prove beyond a reasonable doubt: (1) a “robbery in the first degree or an attempt thereof,” as defined by § 13A-8-41; (2) a “murder,” as defined by § 13A-6-2(a)(1); and (3) that the murder was committed “during” the robbery or attempted robbery, i.e., that the murder was committed “in the course of or in connection with the commission of, or in immediate flight from the
 
 *165
 
 commission of’ the robbery or attempted robbery in the first degree, § 13A-5-39(2).
 
 Connolly v. State,
 
 500 So.2d 57 (Ala.Cr.App.1985), aff'd, 500 So.2d 68 (Ala.1986). The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing.
 
 Davis v. State,
 
 536 So.2d 110 (Ala.Cr.App.1987);
 
 Magwood v. State,
 
 494 So.2d 124 (Ala.Cr.App.1985), aff'd,
 
 Ex parte Magwood,
 
 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). The intentional murder must occur during the course of the robbery in question; however, the taking of the property of the victim need not occur prior to the killing.
 
 Clark v. State,
 
 451 So.2d 368 (Ala.Cr.App.), cert. denied, 451 So.2d 368 (Ala.1984). While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs.
 
 Thomas v. State,
 
 460 So.2d 207 (Ala.Cr.App.1983), aff'd, 460 So.2d 216 (Ala.1984).
 

 “ ‘ “As the Alabama Supreme Court held in
 
 Cobern v. State,
 
 273 Ala. 547, 142 So.2d 869 (1962), ‘the fact that the victim was dead at the time the property was taken would not militate [against a finding] of robbery if the intervening time between the murder and the taking formed a continuous chain of events.’
 
 Clements v. State,
 
 370 So.2d 708, 713 (Ala.Cr.App.1978), affirmed in pertinent part, 370 So.2d 723 (Ala.1979);
 
 Clark v. State,
 
 451 So.2d 368, 372 (Ala.Cr.App.1984). To sustain any other position ‘would be tantamount to granting to would-be robbers a license to Mil their victims prior to robbing them in the hope of avoiding prosecution under the capital felony statute.’
 
 Thomas v. State,
 
 460 So.2d 207, 212 (Ala.Cr.App.1983), affirmed, 460 So.2d 216 (Ala.1984).
 

 “ ‘ “Although a robbery committed as a ‘mere afterthought’ and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, see
 
 Bufford v. State,
 
 supra,
 
 O’Pry v. State,
 
 supra [642 S.W.2d 748 (Tex.Cr.App.1981)], the question of a defendant’s intent at the time of the commission of the crime is usually an issue for the jury to resolve.
 
 Crowe v. State,
 
 435 So.2d 1371, 1379 (Ala.Cr.App.1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim’s property and fled.
 
 Cobern v. State,
 
 273 Ala. 547, 550, 142 So.2d 869, 871 (1962). The defendant’s intent to rob the victim can be inferred where ‘[t]he intervening time, if any, between the killing and robbery was part of a continuous chain of events.’
 
 Thomas v. State,
 
 460 So.2d 207, 212 (Ala.Cr.App. 1983), affirmed, 460 So.2d 216 (Ala.1984). See also
 
 Cobern v. State,
 
 273 Ala. 547, 142 So.2d 869 (1962);
 
 Crowe v. State,
 
 435 So.2d 1371 (Ala.Cr.App.1983);
 
 Bufford v. State,
 
 382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala.1980);
 
 Clements v. State
 
 370 So.2d 708 (Ala.Cr.App.1978), affirmed in pertinent part, 370 So.2d 723 (Ala.1979).”
 

 “
 
 ‘Connolly,
 
 500 So.2d at 63.’
 

 “Hallford v. State,
 
 548 So.2d 526, 534-35 (Ala.Crim.App.1988), aff'd, 548 So.2d 547 (Ala.1989).
 

 “ ‘It is sometimes said that a robbery committed as a “mere after
 
 *166
 
 thought” and unrelated to the murder will not sustain a conviction for the capital offense of murder-robbery.
 
 Connolly v. State,
 
 500 So.2d 57 (Ala.Cr.App.1985), aff'd, 500 So.2d 68 (Ala.1986). However, the appellant’s intent to rob the victim may lawfully and correctly be inferred where the killing and the robbery were part of a continuous chain of events.
 
 Hallford v. State,
 
 548 So.2d 526 (Ala.Cr.App.1988), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989).’
 

 “Harris v. State,
 
 671 So.2d 125, 126 (Ala.Crim.App.1995).
 

 [[Image here]]
 

 “In this case, the State presented evidence that the appellant wanted to go to Muscle Shoals, that the victims repeatedly refused to allow him to use a vehicle to drive there, and that the victims had threatened to report him to Florida law enforcement authorities. It also presented evidence that, after he killed the victims, the appellant took Nancy’s purse and vehicle and Tim’s wallet, used one of Nancy’s credit cards to buy gas, used cash he found to buy crack, and drove to Muscle Shoals. Although the appellant stated that he intended only to kill 'the victims to stop their suffering and contends that the robbery was a mere afterthought, his intent was a question for the jury to resolve. In this case, the jury could have reasonably concluded from the facts and circumstances that the robberies began when the appellant attacked the victims; that the capital offenses were consummated when the appellant took the victims’ property and fled; that the killings and robberies were part of a continuous chain of events; and that the robberies were intentional and were not a mere afterthought. Therefore, the appellant’s argument is without merit.”
 

 See also Connell v. State,
 
 7 So.3d 1068, 1089-90 (Ala.Crim.App.2008).
 

 Also, in
 
 Lewis v. State,
 
 889 So.2d 623, 678-86 (Ala.Crim.App.2003), we addressed a similar situation in the context of a conviction for the capital offense of rape-murder as follows:
 

 “Lewis contends that the trial court erred in not instructing the jury on the offense of abuse of a corpse as a lesser-included offense of capital murder during a rape. (Issue VIII in Lewis’s brief.) Citing
 
 Padgett v. State,
 
 668 So.2d 78 (Ala.Crim.App.), cert. denied, 668 So.2d 88 (Ala.1995), Lewis argues that he was entitled to an instruction on abuse of a corpse because, he says, ‘[t]he evidence is unclear whether Misty McGugin was dying or was already dead at the time of the sexual act.’ (Lewis’s brief at p. 59.)
 

 [[Image here]]
 

 “Initially we point out that, as the Alabama Supreme Court recognized when it denied certiorari review, what this Court stated in
 
 Padgett
 
 regarding instructing the jury on abuse of a corpse was entirely dicta. See
 
 Ex parte Padgett,
 
 668 So.2d 88, 89 (Ala.1995) (Tn denying the petition, this Court does not address dicta in the Court of Criminal Appeals opinion suggesting that, under the circumstances of this case, it would be proper to instruct the jury regarding the offense of “abuse of corpse,” § 13A-11-13,
 
 Ala.Code
 
 1975, as a lesser included offense of murder committed during the course of a rape.’). Moreover, contrary to Lewis’s contention,
 
 Padgett
 
 does not stand for the proposition that a defendant is automatically entitled to an instruction on abuse of a corpse as a lesser-included offense of capital murder during a rape whenever the evidence is ‘unclear’ whether the victim was alive or
 
 *167
 
 dead at the time of the sexual act. Rather,
 
 Padgett
 
 merely recognizes that ‘[i]f the intent to have sexual intercourse arose after the victim’s death, the crime committed would be abuse of a corpse,’ not capital murder during a rape. 668 So.2d at 85. However, that proposition, alone, is not determinative of the issue before us.
 

 “The trial court in this case was correct — the proper inquiry is not whether the sexual act occurred after the victim was dead, but whether the murder and the rape formed a continuous chain of events, i.e., whether the intent to commit the rape was formed before or during the murder. As this Court recognized in
 
 Padgett,
 
 ‘[a]n accused is not guilty of a capital offense where the intent to commit the accompanying felony, in this case rape, was formed only after the victim was killed,’ and ‘[a]n accompanying felony committed as a “mere afterthought” and unrelated to the murder will not sustain a conviction of capital murder.’
 
 Padgett,
 
 668 So.2d at 83. However, ‘ “if an accused had the intent to commit the underlying offense at the time he murdered and the offense is committed immediately after the murder, he is guilty of murder while committing the underlying offense, and the capital murder statute still applies.” ’
 
 Williams v. State,
 
 795 So.2d 753, 773 (Ala.Crim.App.1999), aff'd, 795 So.2d 785 (Ala.), cert. denied, 534 U.S. 900 (2001), quoting
 
 Thompson v. State,
 
 615 So.2d 129, 133 (Ala.Crim.App.1992), cert. denied, 510 U.S. 976 (1993). We adhere to the view enunciated in
 
 Padgett
 
 that ‘[i]f the intent to have sexual intercourse arose after the victim was already dead, there could be no forcible compulsion of the victim to engage in sexual intercourse, thus, although the appellant’s act was offensive and repugnant, it could not be rape.’
 
 Padgett,
 
 668 So.2d at 84.
 

 “However, as the Alabama Supreme Court stated in
 
 Ex parte Roberts,
 
 735 So.2d 1270 (Ala.), cert. denied, 5[2]8 U.S. 939 (1999), regarding a similar issue relating to capital murder during a robbery:
 

 “ ‘This Court held in
 
 Cobern v. State,
 
 273 Ala. 547, 142 So.2d 869 (1962), that the fact that the victim was dead at the time the property was taken would not absolve a defendant of a charge of robbery if the intervening time between the murder and the taking of the property was such as to permit the jury to find that the murder and the taking were links in a continuous chain of events. See
 
 Thomas v. State,
 
 460 So.2d 207 (Ala.Crim.App.1983), aff'
 
 d,
 
 460 So.2d 216 (Ala.1984). To hold any other way “would be tantamount to granting to would-be robbers a license to kill their victims prior to [taking their property,] in the hope of avoiding prosecution under the capital felony statute. 460 So.2d at 212.’
 

 “735 So.2d at 1276-77. Moreover, in
 
 Hutcherson v. State,
 
 677 So.2d 1174 (Ala.Crim.App.1994), rev’d on other grounds, 677 So.2d 1205 (Ala.1996), on remand, 677 So.2d 1210 (Ala.Crim.App.1996), appeal after remand, 727 So.2d 846 (Ala.Crim.App.1997), aff'd, 727 So.2d 861 (Ala.1998), cert. denied, 527 U.S. 1024 (1999), this Court stated:
 

 “ ‘The appellant next argues that there was insufficient evidence to show that he committed the murder during the course of committing a sodomy. Specifically, he argues that there was evidence that the victim was dead at the time she was sodomized and that there was no evidence that the appellant formed the intent to sodomize the victim before the victim was killed.
 

 
 *168
 
 “ ‘Dr. Leroy Riddick, a forensic pathologist, testified that semen was found in the victim’s rectum but that there was no evidence of trauma to the rectum. He testified that this could be either because of her age and the loss of elasticity in the area or because she was sodomized after her death.
 

 “ ‘The appellant argues that on the basis of Dr. Riddick’s testimony he could not be found guilty of sodomizing the victim and therefore could not be found guilty of the capital offense of murder committed during the course of sodomy under § 13A-5-40(a)(3), Code of Alabama 1975. We hold that the legislature did not intend such a result when it enacted § 13A-5-40(a)(3).
 

 “ ‘Section 13A-5-40(a)(3) defines a capital murder as “murder by the defendant
 
 during
 
 a rape in the first or second degree or an attempt thereof committed by the defendant; or murder by the defendant
 
 during
 
 sodomy in the first or second degree or an attempt thereof committed by the defendant.” (Emphasis added.) “During” is defined in § 13A-5-39(2) as “in the course of or in connection with the commission of, or in immediate flight from the commission of the underlying felony or attempt thereof.”
 

 “‘This court in
 
 Hallford v. State,
 
 548 So.2d 526 (Ala.Cr.App.1988), aff'd, 548 So.2d 547 (Ala.1989), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989), had occasion to determine whether a robbery that occurred after a murder could support a conviction for capital murder. Judge Patterson, writing for the court, stated:
 

 “ ‘ “The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing. ... The intentional murder must occur during the course of a robbery in question; however, the taking of the property of the victim need not occur prior to the killing. ... While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs.”
 

 “ ‘548 So.2d at 534 (citations omitted).
 

 “ ‘The reasoning of
 
 Iiallford
 
 applies to this case.
 
 It makes no difference if the actual act of sodomy occmred after the victim’s death.
 

 “ ‘We agree with the Minnesota Supreme Court:
 

 “‘“One who ‘[clauses the death of a human being while committing or attempting to commit criminal sexual conduct in the first or second degree with force or violence, either upon or affecting the person or another,’ is guilty of murder in the first degree. Minn.Stat. § 609.185(2) (1990). In Minnesota the felony-murder rule applies whenever the felony and the homicide ‘are part of one continuous transaction.’
 
 Bellcourt v. State,
 
 390 N.W.2d 269, 274 (Minn.1986) [quoting
 
 Kochevar v. State,
 
 281 N.W.2d 680, 686-87 n. 4 (Minn.1979)]. Thus, the felony-murder rule applies even though the underlying felony is completed after the homicide, provided the felony and homicide are parts of a single ‘continuous transaction.’
 
 Compare State v. LaTourelle,
 
 343 N.W.2d 277 (Minn.
 
 *169
 
 1984) (defendant convicted of first degree felony-murder where defendant intended to rape victim prior to the homicide but the rape took place after the homicide)
 
 with State v. Givens,
 
 332 N.W.2d 187 (Minn.1983) (defendant acquitted of first degree felony-murder where defendant pai'ticipated in murder of victim, then returned to murder scene a short time later to rape victim).
 

 [[Image here]]
 

 ‘“State v. Nielsen,
 
 467 N.W.2d 615, 618 (Minn.1991).’
 

 “677 So.2d at 1194-95 (some emphasis in original; some emphasis added).
 

 “Contrary to Lewis’s contention, he was not entitled to an instruction on the offense of abuse of a corpse as a lesser-included offense of capital murder during a rape merely because the evidence as to whether Misty McGugin was alive or dead at the time of the sexual act was inconclusive.
 

 [[Image here]]
 

 “Although we agree that abuse of a corpse may be a lesser-included offense of capital murder during a rape in certain circumstances — i.e., where the intent to rape was formed only after the murder and the rape was an afterthought unrelated to the murder — those circumstances are not present in this case. Lewis did not argue at trial, and he does not argue on appeal, that the rape was a mere afterthought to the murder, i.e., that he did not form the intent to commit the rape until after McGugin was already dead, and there is no reasonable theory from which the jury could have concluded from the evidence that Lewis did not form the intent to rape until after McGugin was dead. The evidence is clear that the kidnapping, robbery, rape, and murder of Misty McGugin were part of one continuous transaction that began when Lewis first grabbed McGugin and began strangling her in room 18 of Woody’s Motel and culminated in Lewis’s having sexual intercourse with McGugin in the woods and leaving her there. Therefore, we find no error on the part of the trial court in not instructing the jury on the offense of abuse of a corpse as a lesser-included offense of capital murder during a rape.”
 

 Based on the reasoning in
 
 Jones
 
 with respect to robbery-murder and
 
 Lewis
 
 with respect to rape-murder, we likewise conclude that, to establish the capital offense of arson-murder, it is not necessary that the State establish that the arson occurred before the murder as long as it is clear that the murder and the arson were part of a continuous chain of events.
 
 See Roberts v. State,
 
 735 So.2d 1244, 1264 (Ala.Crim.App.1997) (holding that “[t]he jury could easily have found beyond a reasonable doubt that the arson and the murder were part of a continuous chain of events, and that the arson was not a mere afterthought”), aff'd,
 
 Ex parte Roberts,
 
 735 So.2d 1270, 1278 (Ala.1999) (holding that, “[wjhere two offenses are inextricably interwoven, they are said to be part of the res gestae.... The jury could have found that the murder and the arson were part of a continuous chain of events and that Roberts committed the murder ‘in the course of or in connection with the commission of, or in immediate flight from the commission of,’ arson.”).
 
 See also Way v. State,
 
 496 So.2d 126, 128 (Fla.1986) (“We agree with the state that the other committed felony, arson, need not be the cause of death to support this aggravating circumstance. Rather, it is sufficient that the capital murder occur during the same criminal episode as the enumerated felony, which was certainly the case in this instance.”);
 
 People v. Thomas,
 
 137 Ill.2d 500, 534, 561 N.E.2d 57, 71, 148 Ill.Dec. 751, 765 (1990) (“So too, here, defendant
 
 *170
 
 committed both murder and arson, and aggravated arson and burglary, and these crimes occurred ‘essentially simultaneously.’ It is not imperative that the State prove beyond a reasonable doubt that defendant formed the criminal intent to commit arson or aggravated arson before committing murder. It is sufficient that the State proved the elements of the crimes and the accompanying felonies were part of the same criminal episode.”).
 
 But see State v. Hacheney,
 
 160 Wash.2d 503, 518, 158 P.3d 1152, 1160 (2007) (“The legislature adopted the ‘in the course of language after this court ... defined ‘in the course of as requiring a causal connection such that the death was a probable consequence of the felony. ... Moreover, for a killing to have occurred ‘in the course of arson, logic dictates that the arson must have begun before the killing.”).
 

 In this case, Bell argues that the State did not establish a prima facie case of the capital offense of arson-murder because it did not show that he intentionally started a fire in the victim’s home and did not establish that the murder occurred during the commission of second-degree arson because the evidence showed that the victim was dead before the fire started. Although he essentially argues that the arson was a mere afterthought, intent was a question for the jury to resolve. Based on the evidence presented, the jury could have reasonably concluded from the facts and circumstances that the arson began when Bell entered the victim’s home and strangled the victim; that Bell intentionally started a fire in the victim’s house using the candles in the living room; that the capital offense was consummated when Bell fled; that the killing and arson were part of a continuous chain of events; and that the arson was intentional and was not a mere afterthought. Therefore, Bell’s arguments regarding the sufficiency of the evidence are without merit, and the trial court properly denied his motion for a judgment of acquittal at the close of the State’s evidence. Accordingly, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 WELCH, WINDOM, and KELLUM, JJ., concur.